IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SCOTT AND JACQUELINE BEINLICH,** individually and on behalf of the estate of William Edward Beinlich,<br><br>**Plaintiffs,**<br><br>v.<br><br>**JAMES ZEHRINGER, et al.,**<br><br>**Defendants.** | Case No. 2:15-cv-3072<br><br>Judge Graham<br><br>Magistrate Judge Kemp |

## OPINION & ORDER

Tragically, William Beinlich died while visiting an Ohio state park. He was 18 years old. The coroner stated that the cause of William's death was a "closed head injury resulting from blunt force trauma and impact from a fall from a cliff." (Pls.' First Am. Compl. at ¶ 37, Doc. 39). William's parents suspected foul play. They had William's body exhumed and a forensic autopsy performed almost three years after his death. Their expert disagreed with the coroner's conclusion, instead concluding that William drowned. William's parents sued various entities and individuals involved in the investigation into William's death. The Beinlichs assert that the failed investigation into William's death deprived them of their ability to pursue a civil action (or for prosecutors to pursue criminal charges) against the person or people responsible for William's death. As a remedy for this, the Beinlichs seek compensatory damages, punitive damages, attorneys' fees and costs, and a declaratory judgment that William's death certificate be amended to show his cause of death to be "drowning by undetermined circumstances." (Pls.' First Am. Compl. at ¶ A).

All Defendants filed motions to dismiss. (Docs. 40, 41, 46). The Court notes that it afforded Plaintiffs considerable leniency after Plaintiffs failed to comply with the deadline imposed for their response briefs. Even after the Court twice granted Plaintiffs extensions of time, Plaintiffs still filed their brief after the deadline.

1

I) **Factual Allegations**

The factual allegations come from the Plaintiffs' First Amended Complaint. (Doc. 39). Plaintiffs Scott and Jacqueline Beinlich are the parents of William Beinlich. (*Id.* at ¶ 12). In December 2011, William traveled to Ohio to attend his girlfriend's family reunion. (*Id.* at ¶¶ 13–14). On December 11, 2011, William visited Old Man's Cave at Hocking Hills State Park with his girlfriend and members of her family. (*Id.* at ¶ 15). During the visit, William died. Here's what the Beinlichs allege occurred on the day William died.

A) **Facts**

On the morning of December 11, 2011, William was driving a vehicle and was stopped by Chris Grupenhof, a Park Ranger. (*Id.* at ¶ 16). The Beinlichs allege nothing further about this "traffic stop." (*Id.*). The event that caused William's death occurred at 11:35 a.m. (*Id.* at 17). At the scene, three people performed basic life saving measures: William Elder, MD; Jamie Sanders, RN, and Scott Fankhouser. (*Id.* at ¶ 18). Dr. Elder remained on scene until Hocking County EMS arrived, at which point they placed William on a heart monitor and determined he was asystole (he had no heart beat). (*Id.* at ¶¶ 19–20). The Beinlichs allege that Dr. Elder told the Hocking EMS that William's condition was consistent with cold-water drowning and that his body should be warmed with blankets before calling a code. (*Id.* at ¶¶ 21–24). Hocking EMS did not warm the body with blankets, did not perform "any advanced life-saving measures on William," and instructed Dr. Elder to call a code at 12:15 p.m. (*Id.* at ¶ 23–25). A "student observer" with the Hocking County EMS used an iPhone that fell out of William's jacket to attempt to take a picture of William's body; the student observer took a picture of himself instead. (*Id.* at ¶¶ 27–30). The student observer, it is alleged, "did not recall William's jacket being wet, but he did recall William's pants being soaking wet." (*Id.* at ¶ 27).

After the activity at the scene, local law enforcement became involved. Hocking County Sheriff's Sergeant Eric Matheny retrieved William's wallet from a cabin at approximately 3:04 p.m. (*Id.* at ¶ 33). Matheny then transferred custody of the wallet to Ranger Jeremy Davis. (*Id.* at ¶ 34). William's iPhone and wallet were returned to the Beinlichs on December 12, 2011, and the items were "waterlogged as noted on a Hand Receipt provided by Paul Baker II." (*Id.* at ¶ 36).

Later, William's body was sent to the Hocking County Coroner. On December 13, 2011, Dr. David Cummin, the Hocking County Coroner, signed William's death certificate stating that

he died from "a closed head injury resulting from blunt force trauma and impact from a fall from a cliff." (*Id.* at ¶ 37). Dr. Cummin did not conduct an autopsy nor did he conduct a "coroner's inquest." (*Id.* at ¶ 38–39).

Nearly three years later, the Beinlichs sought and received a court order permitting them to exhume William's body. In November 2014, the Beinlichs did so and had an autopsy performed by a forensic pathologist. (*Id.* at ¶ 54). The forensic pathologist's autopsy showed that "William's body did not have any blunt force trauma, and the forensic pathologist determined that William's cause of death was drowning." (*Id.* at ¶ 55). So it wasn't until November 21, 2014—nearly three years after William's death—that the Beinlichs discovered what they consider the actual cause of his death. (*Id.* at ¶ 56). The Beinlichs assert that the feeble investigation into William's death led to a lack of information and an incorrect cause of death on his death certificate.

Here is the extent of the investigation into William's death. Ranger Mark Bryant prepared the "Ohio Uniform Incident Report . . . related to William's death." (*Id.* at ¶ 41). Ranger Chris Grupenhof supervised the investigation. (*Id.* at ¶ 40). The Incident Report records that "members of [William's girlfriend's] family, who William was with at all times relevant, saw him fall from Lower Falls and hit his head several times before falling into a pool of water." (*Id.* at ¶ 43). Bystanders then helped pull William's body from the water and performed CPR. (*Id.* at ¶ 45). The only witnesses to William's fall were members of his girlfriend's family. (*Id.* at ¶ 44). Hocking Valley Community Hospital withdrew blood and urine samples from William and did not preserve any chain of custody for those samples. (*Id.* at ¶ 52).

The Beinlichs allege numerous failings in the investigation of William's death: (1) the failure to mention in the investigation report Ranger Grupenhof's traffic stop of William before the incident that caused his death, (*id.* at ¶ 42); (2) the failure to identify the bystanders who pulled William from the water and performed CPR, (*id.* at ¶ 46); (3) the failure to obtain witness statements from "non-associated persons regarding witnessing William's fall," (*id.* at ¶ 48); (4) the failure to conduct any additional investigation other than witness interviews, (*id.* at ¶ 49); (5) the Hospital's failure to preserve the chain of custody of the blood and urine samples it allegedly took from William's body, (*id.* at ¶ 52); (6) the Sheriff's Department's failure to preserve the chain of custody of William's wallet, (*id.* at ¶ 53); (7) the failure of the coroner to identify the accurate cause of death, (*id.* at ¶ 55).

3

Plaintiffs accuse a number of individuals and entities of failures in the investigation. The defendants as described in the First Amended Complaint are:

> (1) James Zehringer is the director of the Ohio Department of Natural Resources, which is the department responsible for law enforcement in Ohio State Parks.
>
> (2) County of Hocking is the employer of Dr. David Cummin, who is the coroner of Hocking County, Ohio, and Eric Matheny, who is a sergeant with the Hocking County Sheriff's Department.
>
> (3) Dr. David Cummin was the coroner of Hocking County, Ohio at all times relevant to this Complaint.
>
> (4) Hocking Valley Community Hospital is a private entity and joined in this suit as a co-conspirator.
>
> (5) Chris Grupenhof was the park manager of Hocking Hills State Park at all times relevant to this Complaint.
>
> (6) Jeremy Davis and Mark Bryant were park rangers, employed by the Ohio Department of Natural Resources, and staffed at Hocking Hills State Park at all times relevant to this Complaint.
>
> (7) Scott D. Fletcher was the Deputy Chief of the Division of Parks and Recreation of the Ohio Department of Natural Resources at all times relevant to this Complaint.

(Pls.' First Am. Compl. at ¶¶ 5–11). These Defendants responded, some individually, others in groups: (1) Hocking Valley Community Hospital; (2) the "ODNR Defendants," James Zehringer, Scott Fletcher, Chris Grupenhof, Jeremy Davis, and Mark Bryant; (3) the "Hocking County Defendants," Hocking County, Hocking County Sheriff's Department, Hocking County Coroner, Dr. David Cummin, and Deputy Sherriff Eric Matheny. For what it's worth, Dr. Cummin filed a separate reply brief. (*See* Doc. 62).

### B) Claims

Plaintiffs only list one cause of action in their First Amended Complaint. However, Plaintiffs' allegations can be construed to assert three separate claims: (1) deprivation of the right of access to the courts; (2) civil conspiracy; (3) declaratory relief.

Plaintiffs' central claim is for "deprivation of right of access to the courts." (Pls.' First Am. Compl. at ¶¶ 57–66). The Beinlichs assert that Defendants' failure to perform a proper investigation was willful and that failure now prevents either Plaintiffs or the proper authorities from pursuing civil or criminal remedies for William's death. (*Id.* at ¶ 63). They allege that "any cause of action for wrongful death that Scott and Jacqueline Beinlich may have had under the

4

laws of the State of Ohio is time barred." (*Id.* at ¶ 64). Plaintiffs seek compensatory damages, punitive damages, attorneys' fees and costs.

While not organized into a separate cause of action, Plaintiffs also include a claim of civil conspiracy: "All Defendants named in this complaint, individually, jointly and in conspiracy among themselves and with their named and unnamed co-conspirators, failed to investigate the death of William." (*Id.* at ¶ 59). All Defendants addressed the allegation of a conspiracy in their Motions to Dismiss, and Plaintiffs addressed it as such in their response, analyzing it under Ohio civil conspiracy law.

Plaintiffs also request a declaratory judgment "that William's death certificate be amended to show the cause of death "be drowning by undetermined circumstances." (*Id.* at ¶ A.).

Finally the Court notes that Plaintiffs distinguish official- and personal-capacity claims only in the caption of their First Amended Complaint, where they claim to be suing James Zehringer "not personally but in his capacity as the Director of the Ohio Department of Natural Resources." (*Id.* at 1). Plaintiffs do not state whether they bring claims against the other individual defendants in their personal capacity, their official capacity, or both. Defendants move for summary judgment on any individual-capacity claims Plaintiffs may present, and Plaintiffs oppose summary judgment on any individual-capacity claims, which is a good indication that they do bring individual-capacity claims.

**II) Legal Standards**

Several Defendants argue they are entitled to Eleventh Amendment immunity, and these Defendants move to dismiss for lack of subject-matter jurisdiction, as authorized by Federal Rule of Civil Procedure 12(b)(1). "A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is a proper vehicle to assert Eleventh Amendment immunity." *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012).

All Defendants move to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> A claim upon which relief can be granted is a claim that is facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible on its face if it contains enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

5

> While the Court need not accept legal conclusions as true, it must do so with all factual allegations. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. The defendant bears the burden of showing that the plaintiff has failed to state a claim. *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015).

*Ohio Coal Ass'n v. Perez*, 192 F. Supp. 3d 882 (S.D. Ohio 2016).

**III)    Discussion**

Defendants present a variety of arguments in support of their motions to dismiss. They can be split into two categories: (1) arguments that the Court lacks jurisdiction to consider Plaintiffs' claims; and (2) arguments that Plaintiffs have failed to state a claim under Rule 12(b)(6).

One: The ODNR Defendants argue that any official-capacity claims against them should be dismissed because they are entitled to Eleventh Amendment immunity. The parties also make various arguments that the Court lacks jurisdiction to amend the Coroner's verdict because an Ohio statute prescribes the court in which a party may contest such a verdict.

Two: The Hospital and the Hocking County Defendants argue that Plaintiffs can't state a *Monell* claim against them because Plaintiffs fail to allege a "custom, policy, or practice" of either entity that deprived Plaintiffs of a constitutional right. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). All Defendants argue that the Court should dismiss Plaintiffs' Amended Complaint because it fails to state a claim for denial of access to courts and it fails to state a claim for conspiracy. The ODNR Defendants and the Hocking County Defendants sued in their individual capacity (and it's less than clear that any of them are) argue they are entitled to qualified immunity. The Hocking County Sherriff's department argues that it is not *sui juris*—it lacks the capacity to sue or be sued.

Defendants move to dismiss under both Rules 12(b)(1) and (6). Fed. R. Civ. P. 12. The Court may only rule on the merits of Plaintiffs' claims after determining that it has jurisdiction. So, the Court is bound to analyze the 12(b)(1) portions of the motions first. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**A) The Court Lacks Jurisdiction Over Plaintiffs' Claim for Declaratory Relief**

The Ohio Revised Code provides one method of changing the cause of death on a death certificate:

> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted

> manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

Ohio Rev. Code § 313.19.

Here, Plaintiffs don't allege that they attempted to sue in Hocking County Court of Common Pleas to get the death certificate changed. As such, the Court cannot ignore the clear jurisdictional choice expressed in the Ohio Revised Code; this Court lacks jurisdiction over this claim. *See Dunning v. Varnau*, No. 1:14-CV-932, 2015 WL 5729332, at *8 (S.D. Ohio Sept. 30, 2015) ("[T]he Court finds that it does not have jurisdiction to amend the Coroner's verdict pursuant to Ohio Revised Code § 313.19."). Thus, Plaintiffs' claim for declaratory relief is dismissed for lack of subject-matter jurisdiction.

### B) The Eleventh Amendment Grants the ODNR Defendants Immunity in Their Official Capacity

The ODNR Defendants argue that the Eleventh Amendment entitles them to immunity. Plaintiffs argue that Eleventh Amendment immunity does not apply to their claim for a violation of their federal civil rights. Plaintiffs are wrong.

The Eleventh Amendment bars a private citizen's suit against a state or its "agents and instrumentalities." *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008) (quoting *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)). Courts typically conceive of this bar as divesting them of subject-matter jurisdiction. *See, e.g.*, *Hamad v. Mich. State Hous. Dev. Auth.*, No. 16-12754, 2016 WL 7242145, at *1 (E.D. Mich. Dec. 15, 2016). Therefore, the Court must consider Defendants' Eleventh Amendment argument first.

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance in that respect was made clear in our decision in *Quern*.

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (internal citation omitted). "Ohio has not waived its sovereign immunity in federal court." *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). And "[i]t is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

7

Here, Ohio's sovereign immunity applies to Plaintiffs' claims, the only question is the extent to which it does so.

Eleventh Amendment immunity applies to claims "against state officials sued in their official capacity for money damages." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010) (quoting *Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 866–67 (6th Cir. 2009)). While an exception applies to claims seeking prospective injunctive or declaratory relief against an arm of the state, *see Ex Parte Young*, 209 U.S. 123, 155–56 (1908), here the only claim seeking declaratory relief the Court has already dismissed. Therefore, since Plaintiffs only remaining claims are for money damages, and the Eleventh Amendment precludes such claims against state officials in their official capacity, Plaintiffs' official-capacity claims against the ODNR Defendants are dismissed.

### C) Plaintiffs Fail to State a Claim That They Were Denied Free Access to the Courts

To the extent any claims survive Defendants' 12(b)(1) arguments, those claims fail to state a claim as required by Rule 12(b)(6).[1] Plaintiffs have the constitutional right to access the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (discussing the various clauses of the Constitution under which the Supreme Court has found a right of free access to the courts). Plaintiffs bring this constitutional claim through the machinery of § 1983, which "permits individuals to bring suit against a state actor who deprives them of a federal right, either constitutional or statutory, without due process of law." *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013); 42 U.S.C. § 1983. Here, Plaintiffs allege that Defendants' failed investigation into William's death caused them to lose the opportunity to pursue a cause of action for wrongful death, "and/or criminal charges against the person or people responsible for William's death." (Pls.' First Am. Compl. at ¶ 63).

"Denial of access to the courts claims may be 'forward-looking' or 'backward-looking.'" *Flagg*, 715 F.3d at 173. "Forward-looking" claims aim to eliminate "some 'frustrating condition' that stands between the plaintiff and 'the courthouse door.'" *Id.* (citing *Christopher*, 536 U.S. at 413). "In backward-looking claims . . . the government is accused of barring the courthouse door

---

[1] The Sheriff's Department raises the argument that it lacks the capacity to sue or be sued, but it doesn't say whether this argument falls under Rule 12(b)(1) or 12(b)(6). The Sixth Circuit has affirmed a dismissal under Rule 12(b)(6) on the same argument. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (affirming district court's grant of sheriff's office's 12(b)(6) motion because "a county sheriff's office is not a legal entity that is capable of being sued."). The Court need not address this argument because Plaintiffs' claim fails to state a denial-of-access-to-courts claim for other reasons.

by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." *Id.* Backward-looking claims typically involve allegations of a failed investigation or cover-up. *See, e.g.*, *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997) ("Swekel alleges that the police covered-up proof against one of their own, destroyed critical evidence, and delayed Swekel's own investigation.").

Here, Plaintiffs allege a failed investigation, which the Court construes as a backward-looking denial-of-access claim.

> [T]he elements of a backward-looking denial of access claim [are]: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) "substantial prejudice" to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable. Plaintiffs must make out the denial-of-access elements against each defendant in conformance with the requirements of § 1983.

*Flagg*, 715 F.3d at 174 (internal citations omitted) (original alterations omitted).

Here, Plaintiffs' claim fails as a matter of law. Specifically, Plaintiffs fail to allege facts supporting elements three and four of the *Flagg* test. The Court's analysis need not go any further than this, as this failure dooms Plaintiffs' claim against all Defendants.

As all Defendants observe, "Plaintiffs make no allegation that they attempted to file their wrongful death claim, or that they are now barred from doing so." (Hocking Valley Comm. Hospital's Mot. Dismiss at 8, Doc. 40). In Ohio, "a civil action for wrongful death shall be commenced within two years after the decedent's death." Ohio Rev. Code § 2125.02(D)(1). Plaintiffs do not allege that they filed a wrongful death claim by December 11, 2013—two years after William's death. Indeed, Plaintiffs do not allege that they ever attempted to access any Ohio court. This is fatal to their claim, because "[b]efore filing an 'access to courts' claim, a plaintiff must make some attempt to gain access to the courts; otherwise, how is this court to assess whether such access was in fact 'effective' and 'meaningful'?" *Swekel*, 119 F.3d at 1264.

But Plaintiffs argue that they only became "aware that the cause and manner of death was unsubstantiated and unsupported" when they received the opinion of the forensic pathologist they hired to perform a forensic autopsy on William's exhumed body. (Pls.' Resp. at 7, Doc. 60). In their pathologist's opinion, William drowned. They discovered this on December 21, 2014. (Pls.' First Am. Compl. at ¶ 56). Plaintiffs argue that, as of the filing of their Response brief on

9

December 1, 2016, "[a]t this point, to pursue anyone for a wrongful death claim in Ohio is foreclosed by the statute of limitations." (Pls.' Resp. at 7).

But, as several Defendants observed, in Ohio, the "discovery rule" tolls the statute of limitations for a wrongful death claim. *See Collins v. Sotka*, 81 Ohio St. 3d 506, 511, 692 N.E.2d 581, 585 (1998). "[U]nder the discovery rule . . . a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Id.* at 507. Perhaps the wrongful-death claim accrued when the Beinlichs received the opinion on their forensic pathologist; perhaps the claim has yet to accrue because the Beinlichs have not yet discovered any "wrongful conduct" or any "defendant." *Id.* But the Beinlichs never filed a wrongful-death action; instead, they filed this lawsuit. The Beinlichs don't allege that any Defendant prevented them from filing a claim in Ohio. In short, to the extent the Beinlichs' claim rests on the argument that the statute of limitations has run, their claim has not been adequately pleaded.

But, the allegations could be construed to state the claim slightly differently: the Beinlichs know so little about William's death that they could not in good faith pursue any legal action. Put this way, Plaintiffs allege a failure to investigate. But even in cases of a police cover up that involved the destruction of critical evidence, if the plaintiff makes no attempt to go to state court first, federal courts cannot usually permit a denial-of-access-to-court claim. *See Swekel*, 119 F.3d at 1264.

Where the plaintiff never files suit on the underlying claim, the path to a successful claim is quite narrow. In a denial-of-access claim where there is no "known or easily discoverable defendant . . . . the only way to demonstrate that the obstruction, as a matter of fact, reduced the value of the claim is to show that, without the obstruction, there would have been at least some reasonable likelihood of identifying a defendant." *Flagg*, 715 F.3d at 179. In *Flagg*, the Court noted missing electronic files and notes, a missing cell phone, and "counterproductive personnel assignments" that did not "raise a genuine question of disputed fact as to whether a reasonable probability exists that Greene's killer would have been found absent the alleged policy." *Id.*

Here, all Plaintiffs can point to are parts of the investigation that they regard as insufficient. But they provide nothing but conclusory statements to allege that without the ineffective investigation, "there would have been at least some reasonable likelihood of identifying a defendant." *Id.* For example, one of the deficiencies the Beinlichs allege is that the report compiled

10

by one of the park rangers "makes no reference as to any efforts to obtain any witness statements from non-associated persons regarding witnessing William's fall." (Pls.' First Am. Compl. at ¶ 48). But they also allege that "[a]ccording to the Incident Report, the only witnesses who observed William fall were members of Alexis's family." (Pls.' First Am. Compl. at ¶ 44). The Beinlichs don't allege that the Incident Report contains any falsehoods, and if the statement that the only available witnesses were members of William's girlfriend's family, then it explains the lack of effort to obtain statements from other, "non-associated" witnesses.

Plaintiffs have failed to allege "'substantial prejudice' to the underlying claim that cannot be remedied by the state court; and . . . a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg*, 715 F.3d at 174. The Beinlichs don't allege any facts that render it plausible that these Defendants' actions prevented the discovery of what actually happened to William, or who was responsible. In short, Plaintiffs fail to state a claim for denial of access to the courts.

### D) Plaintiffs Fail to State a Conspiracy Claim

Plaintiffs allege that "[a]ll Defendants named in this complaint, individually, jointly and in conspiracy among themselves and with their named and unnamed co-conspirators, failed to investigate the death of William." (Pls.' First Am. Compl. at ¶ 59).

"A civil conspiracy is 'an agreement between two or more persons to injure another by unlawful action.'" *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000)). "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Here, the Court has quoted the only allegation in the First Amended Complaint alleging a conspiracy. This is perhaps the definition of a vague and conclusory allegation that is unsupported by material facts; therefore, it is not sufficient to state a claim for civil conspiracy.

Plaintiffs' conspiracy claim is therefore dismissed.

### IV) Conclusion

Defendants' motions to dismiss are **GRANTED**. (Docs. 40, 41, 46). The clerk is directed to enter judgment for Defendants and terminate all other pending motions. (Docs. 30, 34).

IT IS SO ORDERED.

<u>s/ James L. Graham</u>
JAMES L. GRAHAM
United States District Judge

DATE: February 27, 2017